Thank you, Judge Smith. Thank you, Judge Smith, and may it please the Court. With the Court's permission, I'd like to reserve three minutes of my time for rebuttal. Very well. Thank you, Your Honors. Your Honors, while Apple respectfully disagrees with them, it takes seriously the District Court's findings and regrets that it lost the District Court's respect and trust. But the fundamental issue before this Court is a legal one. Whether even accepting the District Court's finding, the District Court's new injunction represents a proper exercise of the civil content power. May I ask you this question? By my rough count, Apple has asserted 12 claims of error. Given the brevity of time that we have, I hope that you're going to give us what you think is your best argument and why in your time. Yes. Yes, Your Honor, absolutely. And I have to say, I've got one preliminary question, and you have to indulge. Excuse me, but I had a question about jurisdiction. Yes. Because in your brief, you indicate there are further proceedings in the District Court and you plan further appeals. Some of them involve privileged documents. So I guess my question is, one, do we have a final order? And two, are any of the documents at issue pertinent to this hearing? Your Honor, we believe you have jurisdiction under 1291 and 1292. There is an appeal of the District Court's new injunction, which provides jurisdiction, and there's an appeal of the District Court's order resolving all orders from the hearing below. With respect to the separate ongoing proceedings on documents, those documents aren't directly at issue here. So we think the Court does have jurisdiction. That's what I need. I read your jurisdictional statement, but I'm still a little puzzled by it, but I understand your position. Thank you, Your Honor. Your Honors, I'd like to focus on the zero commission rule. And there are three fundamental problems with that rule. First, the zero commission rule is a punishment, the antithesis of a proper civil contempt remedy, because it is impossible for Apple to purge that rule, no matter what it does. Second, the zero commission rule contradicts the District Court's, this Court's, and even EPIC's own recognition that Apple is entitled to at least some compensation for developers' access to its unparalleled innovations and its vast user base. And third, the zero commission rule, like the injunction more generally, is fatally overbroad insofar as it applies to all developers, regardless of whether they are EPIC subsidiaries or whether they seek to link out to purchases on EPIC's own game store. But let's assume, argue in, though, that you are correct, that because, as currently drafted, there's no way to purge this, and either you have to have it analyzed under a criminal standard, or you send it back to the District Court for clarification. If we were to adopt that approach, what would the District Court need to do to determine what was, shall I fee to which Apple would be entitled in a correctly drawn civil injunction? Right, Your Honor. So in that instance, I think the Court would vacate that aspect of the injunction and send it back, and the District Court could do what we believe it should have done in the first place, which is modify the injunction to deal with the new circumstances that were created after the elimination of the anti-steering rules that were at issue in the prior appeal, and which the injunction on its face was limited to. So at that point, Apple would come forward with an appropriate commission, taking seriously what the District Court has said and what this Court says in its opinion, and would be prepared to justify that commission. I think the central inquiry would look at the value that developers receive by accessing Apple's platform. And that's true with respect to in-app or out-of-app purchases. And how does one measure that? As you know, in the Google case, which you were not directly involved in, but are very familiar with, maybe you were actually, but . . . I was not, Your Honor. Okay. They set up a technical commission, if you will, to, I guess, Google would select someone, Epic would select someone, they would then select a third, and presumably come up with an, in quotes, a reasonable fee. Is that something that you're suggesting we do, recommend that the District Court do in this case? So I don't think you would need to set up a technical commission, Your Honor, although Your Honor could look to, you know, other instances for illustration. But I think what you would do is have a hearing in which both sides could present expert testimony on the question of what an appropriate commission would be. And that didn't happen below. The contempt proceedings in this case, which were directed at new circumstances that arose after the elimination of the rules that were the subject of the injunction, what appropriate commission was, what style guidelines would apply, all of the focus of the proceedings below were backward-looking in terms of why Apple adopted the plan that it did, a plan that it gave notice to the District Court of right at the outset of its proceedings. Apple wasn't trying to hide anything. And so instead of having . . . But . . . Yes, Your Honor. With respect, I don't think Judge Gonzalez-Rogers looked at it that way. I think she did think you were trying to hide something, that you reverse-engineered what was done to try to get a specific result. What we're trying to do, we want to get it right. Yes, Your Honor. And let's just say, you're entitled to a reasonable commission, presumably for at least your actual cost. But how do you measure that? Because the iOS platform is quite complicated. It's been developed over a period of time, continues to be developed. I know that from my own gadgets. How do you measure that? So again . . . Go ahead. This is why we would have experts. But I think you would look at the value the developers receive because of the tools and technologies that Apple grants them access to, tools that were used in improving and developing apps in the first place. The value of a safe and secure marketplace in which to operate apps, which is something all users of the Apple ecosystem greatly desire. And the value of the access to Apple's vast user base. All of those items, things, technologies, have value that economists can place on them, that experts would place on them. And we would come forward with a commission that we thought was fair and appropriate in that light. And given the fact that Apple wants to get compensated as soon as it can, are you saying that Apple would have a strong incentive to come forward with a, in quotes, reasonable fee rather than just playing games? Absolutely, Your Honor. The last thing that Apple wants is to be tied up in further proceedings like this and to have to come before this Court again. As I mentioned at the outset, we take very seriously what the District Court has already said. We will take very seriously what this Court says in its opinion. And we have every incentive to go back, propose a reasonable commission, and defend it in a proceeding, a modification proceeding in which experts can be heard on both sides. I also think, though, the breadth of the injunction itself should be revisited in light of the CASA decision, Your Honor. And I think this Court in its prior decision and Judge Smith in your concurring opinion, you honed in on the fact that the harm to Apple, the reason why you had to apply the injunction to other developers, was that Epic was acting as a game distributor. So you had to apply it to other developers. But what other developers? The developers that wanted to link out to purchases on Epic's own game store. Epic doesn't benefit at all if Microsoft can link out to purchases on its own platforms. You have amicus briefs from Microsoft, from Spotify. They are not proper beneficiaries of this injunction. That flies right in the face of the CASA decision, Your Honor. The old – But don't – but don't they – again, CASA is relatively new. Yes, Your Honor. But how else would – how else would one structure an injunction that passes the test of CASA without incidentally benefiting other people? I mean, you try and – if the injunction continues in the way that the district court envisioned, the primary benefit is – beneficiary is Epic. However, others incidentally benefit as well. Doesn't that easily fit within what CASA was talking – I mean, as you may or may not know, I've written a few things about –  I've written a few things about injunctions. I'm very familiar with the whole concept of CASA. And I struggle with how an injunction would be drafted that would not at least have an incidental benefit that helped other people and would in fact comply with CASA. What am I missing? So, Your Honor, I mean, obviously from CASA, the central goal here is to provide complete relief to Epic. Right. Epic has made clear throughout this litigation that it wants people to be able to link out to its own Epic's game store to have purchases on that platform. An injunction that applies to all of Epic's subsidiaries, to any developer that wants to link out to Epic's own platform, the Epic game store, provides Epic complete relief. It does incidentally benefit other developers, but other developers who want to link out to Epic's own game store. To go beyond that, to open the world, to apply the injunction to everyone else, runs straight into all the problems that CASA creates. And I think that's consistent with your prior decision, in that in both the majority decision at page 1003, and in your concurring opinion, Judge Smith, you emphasized that the harm was to Epic as a game distributor, and because of its operation as a game distributor, you had to apply the injunction to other developers who wanted to make purchases on Epic's own platform. And that's... So if I'm following you correctly, you're suggesting that any injunction ought to be limited to Epic, and not to everybody else. But would that not then, if you will, open up a whole new series of lawsuits, and people say, well, in Epic you did this, and I'm entitled to the same thing. We're right back where we started from. Number one, it would apply to other developers who wanted to link out to Epic's own game store. So Epic can build its game store, and it can encourage other developers to go there. I get your point. But what I'm suggesting is that if we did that, and told the district court to do that, that somebody else, whomever, they'd say, okay, this is what you did in Epic. My circumstances are identical. I want the same thing. And they would sue you all over again. Is that helpful? Does that benefit anybody? So Your Honor, I think that's a central question the Supreme Court was dealing with the CASA. And the way they resolved it was to say that in this case, you, the person who's challenging your citizenship, gets relief. There are others out there, maybe thousands, but they can bring their own suits. And you're right. Once there's one decision, that decision will have its force of reasoning, perhaps its precedential force in a circuit. But it's up to the other developers then to come in to enforce that. There's a wrinkle here, though, Your Honor, which is important, which is that there was a separate class action brought on behalf of developers generally that settled. That settlement involved relief, which was geared towards ensuring that developers could get information to their users about the out-of-purchase mechanism for making decisions. Would this be, if you will, a fertile ground for a class action if we limited it to Epic? So my point, Your Honor, is that that class action would impact the manner in which other developers could obtain relief. But I think that the central question for the Court in this case is, what gives Epic complete relief? And an injunction that applies to Epic and that requires, it applies to any developer who wants to link out to Epic. Not Microsoft, not Spotify. They want to link out to Epic. That provides them complete relief. I think you wanted to save some time. I'm taking a little over here. Yes, Your Honor. Thank you. Very well. All right. Mr. Bornstein. May it please the Court, Gary Bornstein for Epic Games. I'd like to start, if I may, with the conversation that the Court had with Mr. Garr on the issue of what would happen if we went back to the district court. As I understand the argument from Apple, it would be that we should go back and Apple should have a chance to try again and that the Court should have the function of setting a price for Apple's intellectual property. That's not how things work. When we were in front of the district court on these contempt proceedings, Apple never once made the argument that a lower price, a different right would be appropriate. Apple stuck to its guns and argued that it hadn't violated the injunction at all. In the course of doing so, Apple misled the district court. These are the factual findings of the court. Apple hid things from the court. Individuals from Apple lied to the court. To have the opportunity then to go back and say, you know what, let's try again and do something that we never asked the court to do in the first place would be inequitable and not required by cases like McComb and C. Shepard and others. But what does a remand look like to you if we find that the contempt order is overbroad? Well, I suppose it depends, Your Honor, on exactly what the nature of the overbreadth is. If we're talking about the commission piece, I think the result would be largely the same. For one thing, to the extent the issue is one of whether or not this was a punitive remedy, as Apple has argued, Apple has not identified additional procedures, but there could be the additional procedures that might be required for a punitive sanction. And those could be ordered if this is deemed to be punitive, although obviously that's not our position. And if the issue is that the commission itself is deemed to be overbroad, I would argue, first of all, Your Honor, that's inconsistent with the initial injunction as it was entered and inconsistent with the record in front of the district court on the reason that the commission was imposed in the first place to evade the injunction. But if, hypothetically, to take the question from Your Honor about what happens if we go back, I think that's a huge problem. And I think it's part of the reason the court doesn't engage in rate setting, because that's exactly the kind of process the court should not go through. Take, for example, a case like McComb, where the Supreme Court said that it would be an experimentation, a program of experimentation in disobedience to send back multiple instances of violation, which could keep going and keep going in a form of whack-a-mole. So let's say we go back and Apple says 26.5 percent, and then the court says, no, that's too high. This injunction went into effect in January of 2024. It took 15 months until it was enforced by the district court in the order that's now on review to then go back and have further opportunities for Apple to pick a different rate it never asked for at any point in these proceedings before. I take that point, counsel, but I guess I'm a little bit troubled by what that leads to. If we take the position of Apple, arguendo, that the way the injunction reads, it is a non-purgeable sanction. Therefore, it has to meet the requirements of a criminal sanction, perhaps a jury trial proving beyond a reasonable doubt, which did not occur here. So if that didn't occur, maybe the alternative is you have no injunction at all, and then you start all over again. So the question then is what they've talked about, and certainly what the case law seems to suggest, is the court can clarify its meaning. It said it was a civil injunction. So if it's going to clarify its meaning, then somewhere you have to find what is a reasonable solution. Apple has the burden in this case to show what it is. Now, admittedly, they dragged stuff out and, in my opinion, misrepresented some things that I talked about in my concurrence when they applied to the Supreme Court. But let's assume that they're straight up this time. They have a strong incentive to get something. So isn't that the better solution here? If you're just saying, hey, you know, this is non-purgeable, so what? That doesn't work, does it? Well, Your Honor, I would take issue with two premises of the question.  The first one on the question of whether or not this is, to use Apple's phrase, purgeable, this is not like a fine or a term of imprisonment that's been entered. This is enforcement of the original permanent injunction. All permanent injunctions are, quote, unquote, non-purgeable unless the party can satisfy the requirements for requesting modification or elimination of the injunction. Again, I probably don't have anywhere near the expertise in injunctions that you do, but I know a lot. And my understanding is that when something is not purgeable, it means you're punishing for something that occurred in the past. You cannot change it. It's done, and you have a certain burden of proof that's been done. Here you have an ongoing sanction, if you will, which means you have to change the purgeability, meaning Apple has to be able to satisfy the terms of the injunction for it to be a civil injunction as opposed to a criminally-based injunction. Right. So I would take issue with that explanation, Your Honor. Okay. I think what the Court has said is exactly right for an extrinsic sanction, like a fine or a term of imprisonment or something like that. What happened here was not the imposition of an extrinsic sanction. It was something more restrained, frankly, which is the district court said, you need to abide by the injunction. And what all the court did was elaborate what the injunction already prohibited. And what it said was you can't charge anything ad infinitum. That's quite a penalty. We're talking billions of dollars, right? Your Honor, that is the import of the original injunction. Maybe it helps to take a step back. Apple is taking the position that it somehow now is unable to charge for things that it previously charged for. That's not correct. The status quo when this injunction was entered and when this court infirmed the injunction is that Apple charged for transactions in an app for digital goods. It had its commission. And for all transactions that took place outside an app on the iOS platform, Apple chose not to charge. Because no one was going to do it, right? I'm sorry, I missed Your Honor's question. They didn't charge because they didn't permit it. That's incorrect, Your Honor. What happened at the time is you could go onto the web, you can make whatever purchase you want outside of an app, and you would not be charged by Apple. And, in fact, Apple argued strenuously at the trial in this matter back in 2021 that developers had the ability to steer users outside the app to make those purchases. Apple argued that, for example, developers could send emails to users and tell them to go make purchases outside the app. That was part of their market definition argument and part of their defense of the anti-steering rules to say, hey, you can go make these purchases now. All that the injunction did, what the district court was trying to accomplish and said it was trying to accomplish, was to make those non-commissioned transactions easier for consumers to make. It didn't change which transactions were commissioned and which transactions weren't. All it did was it eliminated a barrier that Apple had erected that made it harder for users to make those transactions. So the argument that this is sort of a new kind of transaction that didn't exist before, which is at the heart of Apple's argument, is false. Well, what was Project Liberty or whatever that was called? My understanding is that Epic specifically, in this case and in Google for that matter, changed, surreptitiously changed the coding in a way that things would be violative of Apple's contract, if you will. Did I miss something on that? There is one important fact that I think is helpful to bring that into context. What happened in Project Liberty was that a server-side change to the app was made to enable purchases inside of an app. So in Project Liberty, after the change was effected, a user could go into the app and decide that he or she wanted to make a purchase, and inside the app they would get an option, either buy through Apple or buy through Epic. This court, the district court, said that Apple could maintain its rules so that in-app optionality for payments would not be required and Apple could insist that people could use its payment system. That's still true. To this day, under the injunction, anybody who makes a purchase of a digital good in an app on an iPhone uses Apple's purchasing system. On an iPhone, and that's the key because then you're using iOS. And the problem was, if I understand correctly, Epic wanted to, if you will, avoid some of the very heavy commission that Apple was getting through its then in-app purchases, right? So Apple to this day continues to have that in-app purchase mechanism. That hasn't changed. They're not collecting any commissions now, right? They absolutely are. All in-app purchases. Oh, in-app, okay. Apple is collecting its commissions to this day. Sure. What's changed is now, and what also has not changed, before this case and today, Apple has never, never collected any commission on purchases made outside of an app. Apple drew a bright line. What's changed is they're allowed to steer, well, they have to steer people away. Nothing in the injunction says they cannot charge a commission, does it? And when has Epic ever argued that prior to this contempt order that they cannot charge a commission? Well, to be clear, what's changed, Your Honor is correct, is that Apple is no longer able to impose the obstacle that it used to impose to enable people to make these out-of-app transactions. But what stops them from making a business decision to impose a commission on those transactions? What stops them, Your Honor, is the injunction. The injunction was written as all injunctions. An original injunction. Absolutely, Your Honor. Where does it say anything about commissions in that one-page injunction? The injunction does not specifically mention commissions. That is true. But Apple certainly knew, and the record shows that Apple understood, that charging a commission posed a serious risk to it in light of the fact, to compliance with the injunction. They used the phrase compliance risk. In light of the fact that when the injunction was entered, the district court could not and was not required to imagine every possible way that Apple might choose to evade the injunction. The district court said you have these two guidelines that are in your app review guidelines. Get rid of them. Let people, let developers steer their users, and that's all. And then what Apple did is it radically changed various aspects of its business in order to evade that command. The district court doesn't have to predict in advance every single way that Apple might try to evade things. What the district court did is it said you need to make this change, and it wrote it, as district courts always do, against the background of the status quo. And Apple understood that. The factual findings are that Apple knew that. To coerce Apple to now comply, you're saying that a permanent ban on commission is appropriate. Absolutely, Your Honor. That is consistent with the initial injunction as Apple understood it. And frankly, if Apple had a question, if Apple believed that there was some concern, Apple, like in Sea Shepherd, like in McComb, Apple had the ability to come and see clarification. Apple chose not to do that. Apple chose to proceed at risk, which this court and the Supreme Court have previously identified as a risk that an enjoined party takes. And if it does that, well, then contempt is appropriate. And the sanction that the result of the decision here, both to impose a commission in violation of the injunction and then ask to have a second chance after having misrepresented the situation to the district court and to ask essentially for a rate-setting proceeding, that's not how injunction compliance operates. Well, let me ask you this. Your time is almost gone. I know you disagree with what Apple has said. I know you don't think it ought to be sent back. But it would be very helpful to me, certainly the court, let's just assume arguendo for a moment that this is a non-purgeable situation. We need to send it back to the district court for clarification. What do you think should happen if we did that? What should happen in the district court? If we were to go back . . . Arguendo, that's all it is. I understand the premise and I understand that you understand that I disagree with the premise. I do. You disagree with the whole thing. I get that. If we were to go back in front of the district court, I think the district court has the ability to modify its injunction on a proper record, which I think it did here, first of all. Apple had a notice and it had an opportunity to be heard. This was all in front of Apple, in front of the court, and Apple was aware that Epic was arguing that no commission was appropriate from day one of this process. That's it for SER 739. This has been on notice from the beginning. And if Apple believes there were additional procedures that were necessary for it to try to demonstrate some other commission, it should have done that earlier. But if we're to go back now . . . But if we did . . . If we're to go back now, I think the district court would need to assess the appropriateness of whether a modification of the kind that Apple contends the enforcement order is would be appropriate. Let's assume further arguendo that the district court concluded that some amount of money is due to Apple for its intellectual property and any people involved. How does that work from your perspective? Your Honor, Apple is receiving compensation for its intellectual property. All of the in-app transactions continue to be commissioned. All of the out-of-app transactions continue to be non-commissioned. Nothing has changed in that respect. So I just need to underscore the premise that Apple is not getting compensation for its intellectual property is a false premise that Apple has put forward as a central position in this appeal. The only thing that has changed as a result of the injunction, the original one and the current one, is that Apple is no longer able to prohibit people from . . . prohibit developers from steering people to make one type of transaction versus another. A commissioned transaction or a non-commissioned transaction, that hasn't changed. Colleagues, either of you have additional questions? Okay. Thank you very much. Appreciate it. Thank you, Your Honor. So we now have rebuttal time for Apple. Thank you, Your Honors. Your Honors, nothing that you just heard justifies the perpetual imposition of a zero-commission rule, which is a non-purgeable punishment in violation of Supreme Court precedent. So your colleague, Mr. Bornstein, just told us no further compensation is necessary because Apple is being compensated for all in-app purchases other than Fortnite, basically. Is that correct? Absolutely not, Your Honor. I mean, first of all, look at what the district court herself said at 1 ER 61. She acknowledged that even in the absence of IAP, Apple was entitled to some compensation for its intellectual property. And if you think of the user that goes out, that user is still benefiting from Apple's tools and technologies and putting their app on the Apple ecosystem. The user goes out and purchases skins for a Fortnite game or the like, and then they're right back onto the Apple ecosystem to play the game on their iPhone. They're continuing to benefit from Apple, from its innovations, from its vast user base. So they're absolutely wrong about that. Judge McShane, you're absolutely right that the district court's original injunction, which in pertinent part is about 31 words, doesn't mention a commission at all. And my friend was wrong in saying that we were on notice that zero commission was even on the table. They didn't raise that until the very end of the proceeding, and a proper contempt proceeding is to enforce the actual terms of the injunction. I think the Bray-Amicus brief lays out very clearly to the court the proper way to handle the situation. After the original ruling in this case, Apple eliminated the anti-steering rules that were at issue and that are subject to the injunction. That's undisputed. The district court recognized it. They recognized it in the first page of the brief. Then arose a new world, a new set of conditions. Apple had never allowed out-of-purchases before because it required in-app purchases. That was the whole point of the prior litigation. Of course, in that new world, we would charge a commission. Now we're fighting over an appropriate commission. We would urge this case, the court, to set aside the district court's penal zero commission rule, set aside the new injunction, send it back for a proper modification proceedings in which both sides can present their arguments and the district court can rule. But I take it Apple would not contest the fact that it would be unable to charge a commission until the new commission, if you will, was set. Is that correct? Well, Your Honor, we've been under this penal zero commission inappropriate rule for many months. What I would say is we would take very seriously this court's decision. We would urge prompt action by the district court. But I don't think that you could say that it would be subject to the continuing injunction. Bottom line, if we take this approach, Apple has to have an incentive to get a reasonable fee out there rather than dragging it out, right? Yes. Apple has that incentive, Your Honor, and we are prepared to come forward with an appropriate commission and justify it. Okay. Other questions? Just one question. If we take that procedure, aren't we going down the path of impermissible rulemaking or ratemaking that you've criticized? I don't think so because we wouldn't be – you're not asking the district court to pick a commission to set a rate. What you would be doing is sending it back so that Apple can resolve a commission on its own and then justify that commission before the court, consistent with the court's prior ruling in this court's decision in this case. So I don't think that that is inappropriate ratemaking in the sense that the court – the cases talk about. Apple would be justifying its commission. But even if you thought that was concerned, that wouldn't be a reason to leave in place the most penal form of an injunction possible, a zero commission rule in perpetuity. Other questions? No. Thanks to both counsel. Thank you, Your Honor. We appreciate it. It's always a pleasure to have learned, experienced lawyers who know what they're doing, and we appreciate that, and your backup teams. The case just argued is submitted and the court stands adjourned for the day. Thank you. All rise.
judges: THOMAS, SMITH, McShane